JOSEPH RAMOS & another *vs.* JOSE DUARTE MELLO & another.

Bristol.   October 22, 1951. — January 30, 1952.

Present: QUA, C.J., LUMMUS, WILKINS, & WILLIAMS, JJ.

*Adverse Possession and Prescription.   Equity Pleading and Practice,*
   Appeal.   *Equity Jurisdiction,* Trespass, Encroachment.

The owner of a lot 11, the defendant in a suit to require him to remove so
   much of a garage thereon as extended onto a two foot strip of an ad-
   joining lot 9 owned by the plaintiff, was not shown to have title to
   such strip by adverse possession where it appeared that more than
   twenty years before the commencement of the suit one owning both
   lots had built the garage, had later given separate mortgages of the lots
   to the same mortgagee, and still later had made a conveyance of lot 11
   and such strip, and that less than twenty years before the commence-
   ment of the suit the mortgagee had foreclosed the mortgage on lot 11,
   had purchased it at the foreclosure sale and had conveyed it to a
   predecessor of the defendant, and later had foreclosed the mortgage
   on lot 9, had purchased it at the foreclosure sale and had conveyed it to
   the plaintiff.
Questions pertaining to portions of a final decree favorable to the plaintiff
   in a suit in equity were not open on an appeal by the plaintiff only.

There was in the circumstances no error in a final decree in a suit in equity
in that it failed to order the defendant to remove a portion of a garage
on his land which encroached on adjoining land of the plaintiff where
it appeared that the garage had been built by a predecessor of the
defendant and the defendant was not shown ever to have used it.

BILL IN EQUITY, filed in the Superior Court on June 6, 1949, seeking, among other things, that the defendants be required to remove a portion of a garage encroaching on the plaintiffs' land.

The suit was heard by *Forte*, J., upon a master's report. The plaintiffs appealed from the final decree.

*S. Peltz*, for the plaintiffs, submitted a brief.

No argument nor brief for the defendants.

LUMMUS, J. The facts appear in a master's report, which was confirmed. The evidence before the master is not reported, and his findings of subsidiary facts, being consistent with each other, must stand. *Dodge* v. *Anna Jaques Hospital*, 301 Mass. 431, 435. *Sprague* v. *Rust Master Chemical Corp.* 320 Mass. 668, 675. *Weltshe* v. *Graf*, 323 Mass. 498, 500. *Lowell Gas Co.* v. *Department of Public Utilities*, 324 Mass. 80.

The plaintiffs own land on which they live at 9 Calumet Street in New Bedford, which street runs east and west. Adjoining that lot to the west, at 11 Calumet Street, is a lot on which the defendants live. In 1922, when Jennie A. McAloon owned both lots, she mortgaged them by separate mortgages to New Bedford Five Cents Savings Bank. On June 23, 1927, she conveyed to one deCarvelho the lot numbered 11 and also a strip two feet wide of lot numbered 9 along the boundary line. In August, 1932, the bank foreclosed its mortgage on lot numbered 11, and bought that lot in at the foreclosure sale, thereby wiping out the deCarvelho title except as to the two foot strip. In September, 1934, the bank conveyed lot numbered 11 to persons named Duarte, from whom, after an intermediate conveyance, it passed to the defendants Mello on July 20, 1940.

In 1937 the bank foreclosed its mortgage on lot numbered 9 and bought that lot in at the foreclosure sale. After

the foreclosure the bank conveyed it to the plaintiffs Ramos. The deCarvelho title to the two foot strip was thus wiped out.

In 1919, McAloon, owning both lots, had built a garage, mostly on lot numbered 11 but projecting for about two feet easterly onto lot numbered 9. A fence ran from the rear or northerly side of the garage northerly on the land of the plaintiffs Ramos, but the defendants disclaimed ownership of the fence and the master found that it belongs to the plaintiffs. In 1948 the defendants Mello built a concrete curbing from Calumet Street northerly, somewhat easterly of the boundary line and therefore on land of the plaintiffs Ramos, and did so against their objection. The master found that "the said garage and curbing do not interfere actually with plaintiffs' present use and enjoyment of their property."

Until 1922 there could be no adverse possession of that part of lot numbered 9 which was covered by the garage, for until that year McAloon owned both lots. In 1922 McAloon mortgaged each lot to the bank. In 1927 McAloon conveyed lot numbered 11 to deCarvelho together with a two foot strip of lot numbered 9, which included that part of the garage which was on lot numbered 9. But the bank still held its mortgages on both lots, and later foreclosed them and became the purchaser. Neither McAloon nor deCarvelho had adverse possession of that part of lot numbered 9 which was covered by the garage, for there is nothing in the record to show any adverse quality in the possession. "[N]either the mortgagor nor his grantee holds adversely to the mortgagee, until he has distinctly disclaimed holding under him and asserted title in himself." *Holmes* v. *Turner's Falls Co.* 150 Mass. 535, 549. See also *Colton* v. *Smith,* 11 Pick. 311, 315; *Hunt* v. *Hunt,* 14 Pick. 374, 385–386; *Lennon* v. *Porter,* 5 Gray, 318, 320; *Sheridan* v. *Welch,* 8 Allen, 166; *Long* v. *Richards,* 170 Mass. 120, 128. Since the conveyance of lot numbered 11 by the bank to the Duartes in 1934 the twenty years necessary to give title by adverse possession have not elapsed. The present bill was filed on June 6, 1949. The defendants have failed to estab-

lish title by adverse possession. "Mere delay within the period of the statute of limitations does not constitute laches in a proceeding to enforce legal rights." *Scioscia* v. *Iovieno,* 318 Mass. 601, 604.

The only appeal was claimed by the plaintiffs Ramos. The ordering part of the decree is in three paragraphs. The first determines the ownership of the fence to be in the plaintiffs Ramos, correctly as the parties now agree. Whether right or wrong, nothing as to that is open on the plaintiffs' appeal. *Kilkus* v. *Shakman,* 254 Mass. 274, 280. *Greenaway's Case,* 319 Mass. 121, 122. *Brennan* v. *Bonnoyer,* 319 Mass. 307, 309. The second commands the removal of the concrete curbing, and is also wholly favorable to the plaintiffs. The third awards the plaintiffs damages in the amount of $50, and to that extent is favorable to the plaintiffs. No question as to the propriety of any award of damages is open on their appeal.

The only thing in the final decree that is unfavorable to the plaintiffs is the failure to order the defendants to remove that part of the garage which rests upon the plaintiffs' land, and that is the only matter open on this appeal. The defendants did not build the garage. There is nothing in the record to show that the defendants have ever used, or are now using, the garage. We have no occasion to consider what rights, if any, the parties have in the garage. See *Hurley* v. *Guzzi, ante,* 293. It is enough for present purposes to say that the plaintiffs do not show that they are entitled to compel the defendants to remove it from their land.

*Decree affirmed with costs of appeal.*