SALLY L. BRIGGS *vs.* WALLACE E. CROWLEY & others.

Middlesex. January 6, 1967. — March 8, 1967.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Trust,* What constitutes, Accounting, Trustee's discretion, Trust for support. *Public Policy. Gift. Probate Court,* Petition.

A certain petition in a Probate Court, seeking an accounting and other relief against the trustees of a trust established to "provide for the necessaries and comfort" of the petitioner and other life beneficiaries and giving the trustees wide powers and discretion to accomplish that purpose, sufficiently set forth specific facts, as distinguished from mere conclusions, showing a breach by the trustees of their fiduciary duty to the petitioner in withholding benefits from her although the trust property produced sufficient income to provide her with benefits and she was in need of them.   [199]

Read as a whole, a certain instrument transferring property to trustees

─────────

"to provide for the necessaries and comfort of" various life beneficiaries imposed a trust on the trustees for such beneficiaries and did not make a gift of the entire interest in the property although the trustees were designated as remaindermen in the instrument and it stated that the trustees should have "the fullest authority and discretion without limit," which was not to "be questioned by any beneficiary," and should "not be called upon to account to anyone." [199–200]

A provision of a trust instrument that the trustees should "not be called upon to account to anyone or file any accounts" was against public policy and did not relieve the trustees of the duty to render an accounting sought by a trust beneficiary. [200]

Trustees acting under a trust instrument establishing the trust "to provide for the necessaries and comfort of" sundry life beneficiaries and stating that "in order to accomplish this purpose" the trustees should have "the fullest authority and discretion without limit," including discretionary power to withhold benefits, were required to exercise even such broad powers and discretion in good faith and in accordance with usual fiduciary principles in the light of the purpose of the trust, and a failure by them to observe such standard in withholding benefits from one of the beneficiaries would entitle that beneficiary to relief in equity against them. [200–201]

PETITION filed in the Probate Court for the county of Middlesex on April 14, 1964.

The case was heard on demurrer by *Monahan,* J.

*George P. Davis (Charles F. Barrett & Laurence M. Johnson* with him) for the petitioner.

*Joseph B. Abrams (Wallace E. Crowley* with him) for the respondents.

SPIEGEL, J. This is a petition in equity filed in the Probate Court by a life beneficiary under a trust for an accounting from the trustees and for other equitable relief. The petitioner amended the petition on two occasions after the respondents' demurrers thereto were sustained.[1] The petitioner appeals from the decree sustaining the demurrer to her second amended petition and from the decree dismissing that petition.

The material allegations in the petition are as follows. On February 8, 1938, Ada Langley Briggs executed a deed of trust of certain assets to herself and the respondents as

---

[1] The respondents referred to are Wallace E. Crowley and Harold W. Martin, now the sole trustees of the trust. The other respondents were merely named as life beneficiaries of the trust. The petition was taken as confessed against them.

trustees. "The assets of the trust include stocks of a market value in excess of $90,000, providing income in excess of $4,000." The petitioner and others were named in the trust instrument as life beneficiaries. The respondents were named as remaindermen and are entitled to equal shares of the assets of the trust upon the death of the last surviving life beneficiary.

Ada Langley Briggs died, leaving the respondents as the sole trustees. They "have paid lump sums in large amounts to other beneficiaries of the trust in settlement of the claims of such beneficiaries, which payments have been out of proportion to the number of beneficiaries . . . and without regard to the financial needs of such beneficiaries.

"[I]n making such payments the respondent trustees have acted primarily in order to satisfy demands for an account rather than to provide for the necessaries and comfort of the beneficiaries concerned . . . . [T]hey have attempted to exact from beneficiaries to whom such amounts were paid an agreement or pledge of secrecy as to the amount and circumstances of payments."

The trust instrument provides that "The principal purpose of this trust is to provide for the necessaries and comfort of the persons named herein and in order to accomplish this purpose it is intended to give said trustees the fullest authority and discretion without limit and every other unlimited power to do all things. Said trustees may, if they find this intention and purpose is not being accomplished, withhold any money or otherwise or they may buy materials, provisions or do otherwise as the convenience or necessities of any one or more beneficiaries may be described; also said trustees, at their discretion, may permanently withhold all money, materials, provisions, benefits, or otherwise of every name and nature from any one or more of the beneficiaries."

The trust also provides that the trustees "shall not be called upon to account to anyone or file any accounts or disclose any payments to beneficiaries or who the beneficiaries are or otherwise except to the donor" and that the "discretion of the trustees hereunder shall not be questioned by

any beneficiary . . . and the executors, administrators or the heirs or assigns of any beneficiary herein named shall not be entitled to any accounting.''

The petitioner has requested and demanded an accounting from the respondents which they have refused to give either to the petitioner or to the Probate Court. As a result, the petitioner has been ''unable to determine whether . . . [the trust] has been properly administered by . . . [the respondents] and whether the trust res is intact.''

''The petitioner is an unmarried person of advanced years without employment, and with an income of approximately $1,550, and she has been obliged to live without such necessaries and comfort. Until March 1963, the respondent trustees paid to the petitioner and her sister, Marjorie A. Briggs, the sum of $1,200 each year from income of the trust; the petitioner and her said sister lived together in the same house and shared equally the expense of maintenance thereof, the real estate taxes thereon and the interest and principal payments of the mortgage thereon; on the death of said Marjorie on March 3, 1963, the petitioner requested the respondent trustees to increase the payments to her so as to enable her to meet the expenses of the house, but the respondent trustees not only refused to increase such payments but entirely discontinued payments to the petitioner and have since failed and refused to make any payments.''

''The petitioner has made full disclosure to the respondent trustees of her financial situation, and . . . [they] have full knowledge that without payments from the trust the income of the petitioner is insufficient to provide for her necessaries and comfort.''

''The respondent trustees intend to withhold payments to the petitioner in order that as the remaindermen under the trust they will personally receive, on the death of the petitioner, the entire balance of the trust fund, including any income accrued thereunder, and the petitioner believes and therefore avers that because of their self-interest the respondent trustees have withheld payments of income to her.''

Briggs *v.* Crowley.

The prayers of the petition seek an accounting by the respondents and an order that they pay the petitioner "reasonable amounts for her necessaries and comfort."

The respondents demurred to the second amended petition on the grounds that the petition "does not state concisely and with substantial certainty the substantive facts necessary to maintain the action" and that the petitioner "has no legal standing under the terms of the Trust declared upon to maintain her action."

1. To sustain a demurrer on the ground stated by the respondents that a petition "does not state concisely and with substantial certainty the substantive facts necessary to maintain the action" the petition must fail to "sufficiently inform the defendants of the facts so that they might know what they would be called upon to meet." *Lloyd* v. *Howes,* 350 Mass. 19, 21. The allegations in that case were that the plaintiff was "mentally weak," that the defendant "imposed his will upon hers," and "influenced her unduly to execute a document that she did not comprehend," and which was "not in conformity with her wishes and desires." These were obviously the conclusions which the plaintiff would be required to prove by independent facts in order to maintain her action. The allegations in the cases cited in the *Lloyd* case illustrate the type of generalities which are fatal if not accompanied by more specific allegations of facts.[2]

---

[2] In *Boyajian* v. *Hart,* 292 Mass. 447, 450–451, it was alleged that a mortgage and note were subject to "certain equitable defences, set-offs, and agreements by virtue of which said mortgage was not in default . . ." and that certain "defects," not stated in the bill, infected the foreclosure notice; in *Weinstein* v. *Chief of Police of Fall River,* 344 Mass. 314, 317, we referred to a general allegation that "[i]n all material respects, the businesses to which such permits have been granted, and the work performed by such businesses on Sundays are indistinguishable from the business operations of the plaintiff"; in *Mahoney* v. *Houghton & Richards, Inc.* 347 Mass. 764, there were "[v]ery general allegations that . . . [two officers] drew excessive salaries and conspired to transfer a majority of the corporate shares to" one of the officers, and an allegation that one of the officers "performed no services or no services of value"; and in *Vogelaar* v. *H. L. Robbins & Co. Inc.* 348 Mass. 787, the plaintiff alleged that stocks given to brokers under a trust agreement had been traded "with undue frequency" for the brokers' own benefit and the bill did not "set out with precision the facts concerning the defendants' undertaking or the circumstances of particular transactions and arrangements."

In the instant case the allegations, considered with the provisions of the trust agreement (see *Price* v. *Price,* 341 Mass. 390, 393), set out more than generalities and conclusions. Facts are alleged which show that (1) the respondents stand in a fiduciary relationship to the petitioner; (2) the terms of the trust require that the respondents "provide for the necessaries and comfort" of the "persons named herein"; (3) that the trustees have paid lump sums in large amounts to other beneficiaries without regard to their financial needs and such payments were made "primarily in order to satisfy demands for an account"; (4) all powers are held by the respondents subject to the standard set out above; (5) the assets and income of the trust are sufficient to permit the respondents to provide for the petitioner's necessaries and comforts; (6) the income and circumstances of the petitioner have obliged her "to live without such necessaries and comfort"; and (7) the respondents refuse to disburse any funds well knowing the income and circumstances of the petitioner.

Even though some paragraphs of the petition contain conclusions (e.g., that the respondents have "abused their discretion" and have "acted arbitrarily, capriciously, and from a dominant self-interest"), those conclusions are supported by factual allegations which are as specific as could be made without the accounting which the petitioner seeks. We believe that the allegations of the petition are sufficiently specific to adequately inform the respondents of the grounds upon which an accounting is sought. See *DeVincent Ford Sales, Inc.* v. *First Mass. Corp.* 336 Mass. 448, 452; *Price* v. *Price,* 341 Mass. 390, 393; *Fenestra Inc.* v. *Mared Bldg. Prod. Inc.* 349 Mass. 734.

2. It is well settled that a trustee has a duty to account for trust property held by him and can be compelled to so account to the cestui que trust. *Simmons* v. *Barns,* 263 Mass. 472, 475. *Cochrane* v. *Forbes,* 265 Mass. 249, 255. The respondents, however, contend that they are not obliged to render an accounting because the provisions of the trust instrument state that they "shall not be called

upon to account to anyone . . . except to the donor'' and
that the ''discretion of the trustees hereunder shall not be
questioned.''

One implication from such a clause is that the settlor in-
tended ''to make a beneficial gift and not to impose a trust.
. . . Such expressions, however, are not of themselves
enough to indicate an intention to make a beneficial gift.''
Scott, Trusts (2d ed.) § 172.  From a reading of the trust
instrument as a whole we are satisfied that the settlor in-
tended to impose a trust and not to make a gift.

We are of opinion that the clauses in the trust instru-
ment purporting to relieve the trustees of the duty imposed
by law to account are invalid as against public policy in so
far as they purport to deprive the Probate Court of juris-
diction and the petitioner of her standing to maintain this
proceeding.  ''[E]ven when such a provision is made a
part of the trust instrument, the trustee will, nevertheless,
be required in a suit for an accounting to show that he faith-
fully performed his duty and will be liable to whatever
remedies may be appropriate if he was unfaithful to his
trust.''  *Wood* v. *Honeyman,* 178 Ore. 484, 566.  See *Uran*
v. *Uran,* 24 Misc. 2d (N. Y.) 1069, 1071; Scott, Trusts (2d
ed.) § 172; Bogert, Trusts and Trustees (2d ed.) § 973.

3.  The respondents argue that the ''discretion vested in
the trustees to give or withhold payments precludes the
petitioner from maintaining her petition.''  The petitioner
concedes that the trust instrument gives the trustees ''wide
discretion in disbursing, allocating and even withholding
distribution from the trust between and among the various
life beneficiaries'' but contends ''that such power and dis-
cretion must be exercised by the trustees in conformity with
the stated purposes of the trust, and, moreover, must be
exercised honestly and in good faith.''

It is well established that ''even very broad discretion-
ary powers are to be exercised in accordance with fiduciary
standards and with reasonable regard for usual fiduciary
principles.''  *Old Colony Trust Co.* v. *Silliman, ante,* 6,
10.  In *Boston Safe Deposit & Trust Co.* v. *Stone,*

348 Mass. 345, 351, fn. 8, we stated that "A fair reading of the whole of most trust instruments will reveal a 'judicially enforceable, external, and ascertainable standard' for the exercise of even broadly expressed fiduciary powers. See *United States* v. *Powell,* 307 F. 2d 821, 826 (10th Cir.)." In the instant case the trust instrument itself contains a clear expression of the applicable standard for the exercise of the trustees' discretion. "The principal purpose of this trust is to provide for the necessaries and comfort of the persons named herein and *in order to accomplish this purpose* it is intended to give said trustees the fullest authority and discretion" (emphasis supplied). The essence of the petitioner's petition is that the respondents have not exercised their discretion in accordance with this standard.

4. The decrees sustaining the demurrer and dismissing the petition are reversed and the case is to stand for further proceedings in the Probate Court.

*So ordered.*