E. Donald Bouchard & others *vs.* City of Haverhill & others.

Essex. December 9, 1960. — February 3, 1961.

Present: Wilkins, C.J., Spalding, Cutter, & Kirk, JJ.

*Municipal Corporations*, Property. *Equity Pleading and Practice*, Demurrer. *Evidence*, Judicial notice.

On demurrer to a petition in equity, only the allegations in the petition can be considered; other alleged facts stated in a brief before this court must be disregarded. [2]

A transfer of the "care, custody, management, and control" of a parcel of land from the school department to the fire department of a city under G. L. c. 40, § 15A, was not invalid in that the vote of the city council for the transfer did not specify the purpose for which the parcel was transferred where it appeared that the city was about to erect a fire station thereon, or in that the vote of the school committee determining that the parcel was no longer needed for school purposes followed instead of preceding the vote of the city council, or in that the vote of the school committee stated an exception of "a strip [of the parcel] of sufficient width for a street" and no such exception was stated in the vote of the city council. [3–4]

Judicial notice is not taken of adoption by a city of one of the standard forms of charters provided in G. L. c. 43. [4]

Petition filed in the Superior Court on September 22, 1959.

A demurrer to the petition was heard by *Wisnioski, J.*

*Dean E. Nicholson,* for the petitioners.

*Frederick H. Magison,* for the respondents, submitted a brief.

WILKINS, C.J. This petition by not less than ten taxpayers of Haverhill is brought against the city, the city manager, the city council, and the school committee. G. L. (Ter. Ed.) c. 40, § 53. The petitioners appealed from an interlocutory decree sustaining a demurrer and from a final decree dismissing the petition.

One of the grounds of demurrer was want of equity. The case must be decided here upon the allegations of the petition. We must disregard alleged facts outside the record introduced into the respondents' brief in violation of Rule 15 (B) of the Rules for the Regulation of Practice before the Full Court, as amended (1958), 337 Mass. 818–819.

On or about July 14, 1955, the city, pursuant to an order passed by the city council, by eminent domain acquired title to certain parcels of land on South Main Street "for the purposes of constructing a new school building." Thereafter the school committee approved the site and plans for a school building, which "is being erected upon said land and is substantially near completion." On or about July 14, 1959, the city manager determined that a portion of the land was no longer needed for school purposes and so advised the city council. On or about July 21, 1959, the city council transferred that portion of the land, described by metes and bounds and containing 46,700 square feet, "to the care, custody, management, and control of the fire department of the city of Haverhill on condition that no engine house or structure place[d] thereon shall contain a workshop." On or about August 25, 1959, the school committee voted that the committee "having determined that a portion of the Hunking School land fronting on South Main Street, more particularly described below, is no longer needed for school purposes, it is hereby relinquished to the city council in conformity with G. L. c. 40, § 15A, excepting, however, a strip of sufficient width for a street extending from South Main Street to the southern boundary thereof." The description by metes and bounds

was identical with that in the vote of the city council.

The petition alleged "That the determination of the city manager, orders of the municipal council transferring the management, custody, and control of said land to the fire department, and vote of the school committee are conflicting, illegal, and invalid; that they are void because of indefiniteness and vagueness and are improper because they do not meet the requirements of G. L. c. 40, § 15A." It was further alleged that the city is about to raise and expend money and to incur obligations to construct a fire station upon the land. An injunction was sought against raising or spending any money or incurring obligations for the purpose of constructing a fire station or any building other than a school building upon the land.

General Laws c. 40, § 15A (inserted by St. 1951, c. 798, § 4, as amended by St. 1954, c. 105), provides: "Whenever a board or officer having charge of land . . . constituting the whole or any part of an estate held by a city . . . within its limits for a specific purpose shall determine that such land is no longer needed for such purpose . . . whether acquired by eminent domain . . . or otherwise, such board or officer shall forthwith give notice of such determination to the city council . . . . At any time after the receipt of such notice, the city council . . . by a two thirds vote of all its members, in the case of a city having a city manager, with the approval of said city manager . . . may transfer the care, custody, management and control of such land to the same or another board or officer of the city . . . for another specific municipal purpose, any provision of general or special law to the contrary notwithstanding . . . ."

The petitioners' first objection is that the vote of the city council did not specify the purpose for which the land was transferred. It is contended that § 15A requires this to be stated in the vote. This section does not expressly so provide. The eminent domain statute, on which the petitioners rely, does. G. L. (Ter. Ed.) c. 79, § 1. The Legislature might well require greater particularity in taking private property for a public use than in the transfer of real estate from one department of a municipality to an-

other.   The petition alleges, and the demurrer admits, that the city is about to erect a fire station on the land.   This is a municipal purpose.   At worst, failure to recite the purpose would not render the vote void.   An amendment could be made.   *Chase* v. *Aldermen of Springfield,* 119 Mass. 556, 563.   *Byfield* v. *Newton,* 247 Mass. 46, 58.

The petitioners argue that the vote of the school committee should have preceded the vote of the city council.   We are referred to G. L. (Ter. Ed.) c. 43, §§ 33 and 34, giving powers of the school committee under the chapter providing the standard forms of city charters.   *Eastern Mass. St. Ry.* v. *Mayor of Fall River,* 308 Mass. 232, 234.   We do not take judicial notice of the adoption of a charter under G. L. (Ter. Ed.) c. 43, § 2 et seq.   *Howes* v. *Essex,* 329 Mass. 381, 382.   *Nayor* v. *Rent Bd. of Brookline,* 334 Mass. 132, 135. If we might infer that Haverhill has adopted a Plan D charter from the fact that the city manager is a party respondent, the result would be the same.   The substance of the matter is that the city council and the school committee concur and the city manager has approved.   The vote of the council could remain ambulatory until action by the school committee.

The argument is also made that the vote of the school committee could not cure any apparent defect because of the exception of a strip for a street the width of which is not given and which was not mentioned in the vote of the council.   Just how a street comes within the jurisdiction of the school committee has not been shown.   However that may be, full effect can be given the vote of the school committee by excluding the street from the operation of the vote of the council.   No dispute as to the precise location of the street appears.   Should the location, which now seems to be a trifling matter, become a serious question, it nevertheless is not the kind of question which may be raised by a taxpayers' petition.   *Povey* v. *School Comm. of Medford,* 333 Mass. 70.   *North* v. *City Council of Brockton,* 341 Mass. 483.

*Interlocutory decree affirmed.*
*Final decree affirmed.*